## Case No. 5,106.

FRENCH v. The VICTORIA.

[31 Leg. Int. 293; [1] 10 Phila. 292.]

District Court, D. New Jersey. Aug. 7, 1874.

. A. Flanders, for the Hazel Dell.
Elias L. Boudinot, for the Victoria.

. NIXON, District Judge. This is a libel in rem by Hiram E. French, master of the schooner Hazel Dell, for himself and owners, against the schooner Victoria, to recover damages for a collision. The libel sets forth that on the 6th of September, 1873, at about 8 o'clock in the morning, the schooner Hazel Dell, in proceeding from the port of New York, in ballast, to the port of Tuckerton. New Jersey, entered the inlet of Little Egg Harbor; that the captain and all the crew were on deck and observed the Victoria with all her sails set sailing up the said inlet towards the Hazel Dell, and thereupon the captain and others of the crew called several times loudly to the crew of the Victoria and desired them to keep clear of the Hazel Dell; that although there was sufficient room for the Victoria to pass she kept on her course with the wind and tide, and with violence ran foul of and on board the Hazel Dell, breaking her boom, tearing her mainsail, and damaging her yawl boat; that at the time of the said collision it was impossible for the Hazel Dell to get out of the way of the Victoria, because she was properly on her way and on her starboard tack; had just gone about to avoid collision and had not gathered way; that there was room enough for the Victoria to steer clear of and

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reprinted from 31 Leg. Int. 293, by permission.]

pass by the Hazel Dell, and that the damage was caused by the captain of the Victoria not heeding their calls and making proper efforts to avoid the collision. John Rose intervenes as owner, and answers, acknowledging the collision at the time and place stated in the libel, but alleges that it occurred without fault of those in charge of the Victoria, and entirely from the negligence and unskilfulness of those in charge of the Hazel Dell. He states the collision to have occurred as follows: The schooner Victoria was beating up Little Egg Harbor inlet, at or about 8 o'clock in the forenoon of the 6th day of September, 1873, and having both the wind and tide ahead or adverse. The schooner Hazel Dell entered the inlet after the Victoria, and sailed up the said inlet astern of her. The Victoria having reached a very narrow place in said inlet known "as the Point of Sods," where the channel is about two hundred feet wide, was sailing across the same, having her port tacks aboard (that is to say, heading towards the right hand side of the channel on her way up the same,) and was close hauled to the wind when the Hazel Dell sailed close up to her under her port quarter, and thereby forced the Victoria to go almost aground before changing her tack in order to avoid a collision with the Hazel Dell head on; that the Hazel Dell, after thus driving the Victoria almost ashore, and when it became necessary for the Victoria to go about to avoid going on the breakers, which were at that time right under her bows, did not change her course as it was her duty to do, but kept on the same and came nearly abreast of the Victoria on her port side, and so close to her as to leave no room for the Victoria to turn without coming foul of the Hazel Dell. Those in charge of the Victoria being in this perilous condition in which they were placed entirely by the fault of those navigating the Hazel Dell as aforesaid, took all the precaution possible to avoid a collision consistent with safety to their vessel, and went about, put the helm hard to starboard, and endeavored to avoid a collision by letting the Victoria pay off before the wind and go clear of the Hazel Dell and astern of her, but the Hazel Dell having placed herself in the position above described it was impossible for those in charge of the Victoria to avoid a collision of the jib-boom of the Victoria and the after lash of the mainsail of the Hazel Dell.

I have carefully examined the testimony taken and am of the opinion that if the captain of the Victoria when he first became aware of the danger of a collision had put his helm a starboard, slackened his peak and raised his centre board, he would probably have passed to the stern of the Hazel Dell; and that the collision occurred because he kept his course too long before he tried that method to avoid it. I am further of the opinion that if he had put his helm hard a lee and

brought the Victoria into the wind no damage would have been done. The case, therefore, turns upon the single question whether the Victoria was entitled under the circumstances to hold her course. And this question is determined by the provisions of an act, entitled "An act fixing certain rules and regulations for preventing collisions on the water," approved April 29, 1864 (13 Stat. 58), and which was only the adoption by congress of the "Rules and Regulations" promulgated by order in council, January 9, 1863, issued under and by virtue of the British "Merchant Shipping Amendment Act" of 1832. The articles applicable to this case are the 12th, 17th, 18th and 19th; the first and second named referring to the duties of the Hazel Dell; the third to the Victoria, and the last, under special circumstances, to both. The 12th article prescribes, that "when two sailing ships are crossing so as to involve risk of collision, then if they have the wind on different sides, the ship with the wind on the port side shall keep out of the way of the ship with the wind on the starboard, except in the case in which the ship with the wind on the port side is close hauled and the other ship free, in which case the latter ship shall keep out of the way." I find no evidence to bring the case before me within the exception. Both vessels were close hauled, beating against the wind, in a narrow channel, were crossing so as to involve risk of collision, having the wind on different sides, and the Hazel Dell having it on her port side. By the 17th article "every vessel overtaking any other vessel shall keep out of the way of said last mentioned vessel." Both parties admit that the Hazel Dell was the overtaking vessel; that she entered the inlet some time after the Victoria, and was about passing her when they came in contact. By the express terms of both of the above articles, it was undoubtedly the duty of the Hazel Dell to give way, and to keep out of the way of the Victoria. It was not for her to assume that the Victoria would change her course, for the 18th article says, "that where one of two ships is to keep out of the way the other shall keep her course, subject to the qualifications contained in the 19th article." The rule of the road did not oblige, or even allow her to change, unless it became necessary in order to avoid immediate danger. The Hazel Dell, therefore, is not entitled to any compensation for the damages which resulted from the collision, unless it can be made to appear that there was something in the relative situation of the vessels, and wilfulness or want of skill in the management of the Victoria, which contributed to the accident, and which takes the case out of the general rules and brings it within the provisions of the 19th article. That article is in the nature of a proviso to save special cases, and prescribes that "in obeying and construing these rules due regard must be had to all dangers of navigation, and due regard must also be

had to any special circumstances which may exist in any particular case, rendering a departure from the above rule necessary in order to avoid immediate danger."

What is the correct interpretation of this article? Does it mean that when any special circumstances exist rendering a departure from the rules necessary in order to avoid danger, the parties may or must depart from them? If it were an open question in this court I should be inclined to say that it was a privilege accorded and not a command to be obeyed; that it allows either one or the other of the parties, in those emergencies, where adherence to the rules must result in collision, to depart from them, and to adopt such methods as good seamanship would suggest, to escape the imminent peril, but that even in such cases no obligation rests upon the party not in fault to depart from the rules in order to avoid what seemed at the moment to be the certainty of a collision. And I find on examination that I am sustained in this view by Dr. Lushington, in the case of The Eliza v. The Orinoco, reported in Holt, Rule of Road, 98. In his address to the elder brethren, after quoting the 19th article, he said: "Now, according to my view of that section, it is an exemption of persons who would otherwise be under obligations to obey the previous sections. In omitting so to do, viz., the effect of it would be this, that though they were directed to keep their course, yet if there was imminent danger, they would be justified in not keeping their course, provided they had a chance thereby of avoiding the certainty of a collision. But it does not appear to me this is a directory section at all, that tells parties they are to do this or that, or anything else; but they are released from the severe obligation of complying with all the terms of the previous sections, and they are released from that obligation by circumstances which would render obedience to them conducive to peril, while by deviation, they might escape from that peril."

But this does not seem to be the construction given to the article by the supreme court. It was held in the case of The Maria Martin, 12 Wall. [79 U. S.] 31, that even flagrant fault committed by one of two vessels approaching each other from opposite directions does not excuse the other from adopting every precaution required by the special circumstances of the case to prevent a collision. Mr. Justice Clifford delivered the opinion of the court affirming the decree of the circuit court, which had divided the damage equally between the libellant and respondent on the ground that both parties were in fault, and as illustrating his view of the meaning of the 19th article he said: "Errors committed by one of two vessels approaching each other from opposite directions does not excuse the other from adopting every proper precaution required by the special circumstances to prevent a collision,

as the act of congress prescribes that in obeying and construing the prescribed rules of navigation due regard must be had to the special circumstances rendering a departure from them necessary in order to avoid immediate danger."

Accepting this as the meaning, the only remaining inquiry is, whether the Victoria, although entitled to keep her course by the 18th article, was nevertheless inexcusable because she did not depart from it under the pressure of impending peril? She did depart from it at the last moment, but procrastinated too long to keep from coming in collision. When at the distance of about thirty or forty feet, and when, as the captains of both vessels agree, there was a certainty, without a change of course, of striking the Hazel Dell about midships, the helm of the Victoria was put to the starboard, whereby she bore away aft of the hull, but came in contact with her yawl boat and the end of her main boom, breaking the latter and tearing the mainsail. If this action had been taken sooner it is probable that she would have passed to the stern of the Hazel Dell and avoided her altogether. But that was not the departure from the rule which it seems to me good seamanship demanded. Why was not the Victoria put in stays? That was the most obvious movement which the circumstances of the vessel suggested. The case really appears to be this: that the captain of the Victoria knew enough of the rules of the road to know that he was entitled to his course, and that it was the duty of the Hazel Dell to keep out of the way. He had the slower craft, which is always an irritating fact to an ambitious captain, and he resolved in his own mind not to yield an iota of his strict legal rights to his more fortunate rival. This resolution was adhered to in the face of immediate danger, and until the collision was inevitable. According to the principle of The Maria Martin, supra, he ought "to have adopted every proper precaution required by the special circumstances to prevent a collision," without reference to the ordinary rules of navigation, and I think he came short in this respect in not porting his helm and bringing his vessel into the wind.

I have not overlooked the reasons which the captain of the Victoria has given for not doing so, viz., that he was so near the shore that there was danger of his getting on the breakers. The weight of the testimony was against this view of their situation. He acknowledged that he had gone about and had run at least two or three lengths of his vessel before the collision took place. Other evidence located them nearer the middle of the channel. But considering the daylight, the calm weather, the state of the wind and of the tide, there appears from his own admissions, room enough to have brought the Victoria in stays without peril. It hence results that the owner of the Victoria should

equally divide the damage caused by the collision with the Hazel Dell, which was also in fault. This view of the case renders it unnecessary for me to consider whether the claim of the respondent for damages for the detention of his vessel should be allowed. That question will properly arise when the defence prevails, and when the judgment of the court fixes no blame on the management of the defendant's vessel.